**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JACQUELINE F. HOFFMEYER,**

        **Plaintiff,**

**v.**                                     **Case No:   6:19-cv-981-Orl-EJK**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

_____/

**ORDER**

Plaintiff, Jacqueline F. Hoffmeyer, brings this action pursuant to Title II of the Social Security Act (the "Act"), as amended, 42 U.S.C. §§ 405(g) and 423, to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her Disability Insurance Benefits ("DIBs") under the Act. (Doc. 1.) Upon a review of the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the ALJ's decision, the administrative record, and the pleadings and memorandum submitted by the parties, the Court reverses the Commissioner's final decision in this case, pursuant to sentence four of 42 U.S.C. § 405(g).

## I.    BACKGROUND

Plaintiff filed for DIBs on August 3, 2015. (Tr. 195.) She alleged an onset of disability on April 1, 2015, due to fibromyalgia, depression, anxiety, migraines, degenerative disease, and osteoarthritis. (Tr. 80.) Her application was denied initially on August 27, 2015, and upon reconsideration on December 1, 2015. (Tr. 90, 102.)

Plaintiff attended a hearing before an ALJ on February 13, 2018. (Tr. 48–78.) In a decision dated June 28, 2018, the ALJ found Plaintiff not disabled, as defined under the Act. (Tr. 7–28.) Plaintiff appealed this decision to the Appeals Council, and on March 26, 2019, the Appeals Council denied Plaintiff's request for review. (Tr. 1–6.) Plaintiff timely filed this action for judicial review of the Commissioner's decision on May 24, 2019. (Doc. 1.) Plaintiff has exhausted the available administrative remedies, and the case is properly before this Court.

## II.      THE ALJ'S DECISION

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Social Security Administration and set forth in 20 C.F.R. § 404.1520(a)(4). Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work available in significant numbers in the national economy. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237–1240 (11th Cir. 2004). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. *Id.* at 1241 n.10.

Here, the ALJ performed the sequential analysis through step five. (Tr. 7–28.) The ALJ initially noted that Plaintiff met insured status under the Act through December 31, 2019. (Tr. 12.) Moving to the analysis, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2015, the date of Plaintiff's alleged disability onset. (*Id.*) At step two, the ALJ determined that Plaintiff had the following severe impairments: fibromyalgia, degenerative disc disease of the lumbar spine and cervical spine, mild osteoarthritis of the right knee, degenerative changes of the right ankle, and morbid obesity. (*Id.*) At step three, the ALJ

found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19.)

Before proceeding to step four, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) with certain exceptions. Specifically, the climbing of ramps and stairs must be limited to frequently while the climbing of ladders, ropes or scaffolds must be precluded entirely from work duties as assigned. Further, balancing, stooping (bending at the waist), kneeling, crouching (bending at the knees) and crawling must be limited to frequently.

(Tr. 15.)[1]

At step four, the ALJ concluded that Plaintiff was capable of performing her past relevant work as a teacher for the learning disabled and composite work consisting of teacher for the learning disabled and staffing specialist. (Tr. 19.) Despite finding Plaintiff could return to her past relevant work, the ALJ nevertheless proceeded to step five. There, she found that, considering Plaintiff's age, education, work experience, and residual functional capacity, jobs existed in significant numbers in the national economy that Plaintiff could perform, such as teacher aid I and II. (Tr. 21–22.) As such, the ALJ found that Plaintiff was not under a disability at any time from April 1, 2015, through the date of the decision. (Tr. 22.)

---

[1] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." SSR 83-10. The regulations go on to clarify that "[e]ven though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing -- the primary difference between sedentary and most light jobs." *Id.*

### III.    STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotation marks omitted).

When the Commissioner's decision is supported by substantial evidence, the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]" *Id.* However, though the review is limited, "the entire record must be scrutinized to determine the reasonableness of the Secretary's factual findings." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).

### IV.    DISCUSSION

Plaintiff's chief argument on appeal is that the ALJ failed to properly evaluate Plaintiff's fibromyalgia as set forth in Social Security Ruling ("SSR") 12-2p. (Doc. 19 at 20.) Plaintiff also argues that the ALJ erred in assessing Plaintiff's credibility, and that the ALJ's treatment of the records from Plaintiff's treating rheumatologist, Pamela Freeman, M.D., and treating Physician Assistant, Sari Sender, was not supported by substantial evidence. (*Id.* at 30, 33.) Upon review,

the Court finds that Plaintiff's first argument warrants reversal and remanding for further proceedings.

Plaintiff asserts that the ALJ failed to follow SSR 12-2p in assessing Plaintiff's fibromyalgia. (Doc. 19 at 21–23.) That regulation provides guidance on how the Social Security Administration (1) develops evidence to establish that a person has a medically determinable impairment of fibromyalgia, and (2) at issue in this case, how the severity and functional limitations of fibromyalgia are evaluated for disability claims. SSR 12-2p, 2012 WL 3104869 (July 25, 2012). The Commissioner responds that simply because Plaintiff has fibromyalgia does not mean that it caused disabling limitations greater than those imposed in the ALJ's RFC determination, and the ALJ otherwise properly considered Plaintiff's fibromyalgia in assessing Plaintiff's RFC. (*Id.* at 27–28.)

Fibromyalgia is a disease "which often lacks medical or laboratory signs and is generally diagnosed mostly on a[n] individual's described symptoms." *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2015). It is "characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 WL 3104869, at *2; *see also Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 987-88 (11th Cir. 2015) (citing SSR 12-2p). Thus, SSR 12-2p directs the ALJ on how to assess fibromyalgia in light of its unique presentation.

Here, the ALJ found that fibromyalgia was one of Plaintiff's medically determinable impairments, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with the record. (Tr. 18.) As to the latter issue, SSR 12-2p states:

> If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms. As we explain in SSR 96-7p, we will make a finding about the credibility of the person's statements regarding the effects of his or her symptoms on functioning.

SSR 12-2p, 2012 WL 3104869, at *5.

The ALJ found that the objective medical evidence did not substantiate Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms. (*See* Tr. 15–19.) Thus, the ALJ was required, under SSR 12-2p, to review all of the other record evidence. Plaintiff contends that the ALJ failed to do this. Specifically, Plaintiff states that the ALJ explicitly considered only Plaintiff's daily activities, as testified to by Plaintiff and Plaintiff's daughter, and which even then, the ALJ misconstrued. (Doc. 19 at 23.) Plaintiff asserts that the ALJ failed to consider or adequately address Plaintiff's medications, treatments used to alleviate her symptoms, and the nature and frequency of her attempts to obtain medical treatment for her symptoms. (*Id.*)

Here, a review of the record reveals that the ALJ adequately evaluated Plaintiff's symptoms in the context of her daily activities and considered Plaintiff's daughter's statement. As to Plaintiff's daily activities, the ALJ recounted Plaintiff's testimony from the hearing and her self-completed Function Report. Plaintiff reported that she is able to drive, take her dog for a walk to the end of the block, clean her house, do laundry, sometimes go out with friends, do daily grooming activities, prepare simple meals, and shop for groceries. (Tr. 53, 57–58, & 306–314 (Ex. 12E).) The ALJ also considered Plaintiff's daughter's testimony provided in a Third Party Function Report. Her daughter reported that Plaintiff, at times, cleans up after her and helps with laundry, and confirmed much of what Plaintiff herself reported. (Tr. 244–253 (Ex. 4E)). Therefore, the

undersigned does not agree with Plaintiff's assertion that the ALJ mischaracterized the extent of Plaintiff's daily activities. (Doc. 19 at 23–24.) The ALJ reviewed Plaintiff's daily activities in two separate parts of the opinion, and neither review exaggerated what Plaintiff was able to do on a daily basis or conflicted with the record testimony. (*See* Tr. 16 & 18.) Thus, the undersigned finds no error in this regard.

However, Plaintiff's contention that the ALJ failed to address the remaining factors—her medications, treatments she uses or had used to alleviate symptoms, and the nature and frequency of her attempts to obtain medical treatment for symptoms—set forth in SSR 12-2p, does have merit. (Doc. 19 at 22–24.) Plaintiff is correct that the ALJ did not explicitly evaluate the numerous medications Plaintiff used to treat the symptoms of her fibromyalgia. Rather, the ALJ's decision only stated that at one point, one of Plaintiff's doctors recommended she discontinue Flexeril. (Tr. 17.) But Plaintiff points out that she had, at various times, tried Lyrica, Savella, Gabapentin, Flector patches, Ibuprofin, Toradol injections, Cyclobenzaprine, Duloxetine, and Cymbalta, and was still symptomatic. (Doc. 19 at 23, citing Tr. 422–423, 518, 519, 522.) Additionally, the ALJ did not explicitly evaluate the various treatments Plaintiff had tried in the past to improve her symptoms. Plaintiff asserts that in addition to treating with her primary care doctor and rheumatologist, Plaintiff saw a pain management doctor and a chiropractor, which the ALJ did not squarely address.[2] (Doc. 19 at 23, citing Tr. 467, 493.)

Finally, the ALJ did not adequately address the nature and frequency of Plaintiff's attempts to obtain medical treatment for her symptoms. Plaintiff places particular emphasis on the ALJ's relatively brief analysis of Plaintiff's treating rheumatologist Pamela Freeman, M.D.'s records. Dr.

---

[2] Plaintiff also asserts that the ALJ did not address the fact that Plaintiff treated at an arthritis center and saw a neuropsychologist (Doc. 19 at 23), but a review of the ALJ's decision reveals the ALJ did address these records (Tr. 18).

Freeman had treated Plaintiff since 2008, and by April 2015, it was Dr. Freeman's opinion that Plaintiff has reached maximum medical improvement. (Tr. 371.) Specifically, Dr. Freeman opined that Plaintiff had not been successful with even part-time work due to her pain, fatigue, and poor concentration. (*Id.*).

> In assessing Dr. Freeman's opinion, the ALJ stated:

>> I give some weight to the opinion of Dr. Freeman, who opined the claimant was incapable of sedentary work but concluded the claimant was able to lift and carry 10 pounds frequently and 20 pounds occasionally. 3F, 14F. As discussed above, Dr. Freeman's physical examinations were generally unremarkable. Notably, the claimant's extremities had a normal range of motion and there was no loss in motor strength or gait. 21F/3, 10. These findings were consistent even between different providers. 4F/10, 16F/2. I find the physical examinations do not support a less than sedentary residual functional capacity. Given this, I give some weight to the opinion of Dr. Freeman.

(Tr. 17.) A review of the ALJ's decision demonstrates that, rather than addressing (or mentioning) all of the factors in SSR 12-2p, the ALJ placed an undue emphasis on the lack of objective findings to substantiate Plaintiff's fibromyalgia complaints, both with regard to Dr. Freeman's opinion and that of other treaters. Here, the ALJ's repeated reference to the objective medical evidence demonstrates that she relied primarily on that evidence to the exclusion of other evidence. This constitutes error. *Francis v. Saul*, No. 8:18-cv-2492-T-SPF, 2020 WL 1227589, at *4 (M.D. Fla. Mar. 13, 2020) (finding error where ALJ did not adequately consider SSR 12-2p's framework when discounting the plaintiff's statements on limitations due to fibromyalgia and instead nearly exclusively relied on objective medical evidence); *Witherell v. Berryhill*, No. 8:17-cv-2806-T-CPT, 2019 WL 1397927, at *4 (M.D. Fla. Mar. 28, 2019) (finding error where ALJ placed undue emphasis on lack of objective medical evidence in evaluating the plaintiff's fibromyalgia-related complaints).

For example, the ALJ repeatedly points to Plaintiff's generally unremarkable physical examinations, normal gait and range of motion, and normal muscle strength. (Tr. 17–18.) But these findings "do not comport with SSR 12-2's recognition that physical examinations will usually yield normal results, *e.g.*, a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Catalan v. Berryhill*, No. 8:17-cv-1425-T-30MAP, 2018 WL 4055340, at *3 (M.D. Fla. Aug. 9, 2018) (recommending remand where ALJ failed to mention or follow SSR 12-2p's criteria concerning the limitations of the plaintiff's fibromyalgia), *report and recommendation adopted*, 2018 WL 4052276 (M.D. Fla. Aug. 24, 2018). Rather, "the fact that the ALJ's decision does not indicate that she considered the import of certain examination findings that consistently revealed tenderness throughout the Plaintiff's body only exacerbates this error." *Witherell*, 2019 WL 1397927, at *4; (Tr. 17–18) (demonstrating that Plaintiff reported tenderness on at least some exams to each provider whose records the ALJ addressed). While the ALJ noted Plaintiff's reported tenderness at multiple visits with multiple treaters, it is apparent that she disregarded this in light of objective medical evidence and that she did not evaluate it in within SSR 12-2p's framework.

Reversal is warranted where the ALJ did not adequately consider (or even refer to) SSR 12-2p's framework for evaluating fibromyalgia when discounting a plaintiff's statements regarding intensity, persistence, and limiting effects of her symptoms. *See, e.g.*, *id.* at *3–4. As such, the ALJ's analysis regarding Plaintiff's fibromyalgia-related symptoms in this case is inadequate, and the Court cannot conclude that the ALJ's ultimate disability determination is supported by substantial evidence. Accordingly, reversal and remand are warranted.

Plaintiff's remaining issues, while tangentially addressed in this Order,[3] need not be addressed further because the case is being remanded to the Commissioner for further consideration. *See, e.g.*, *Demenech v. Sec'y of Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (declining to address plaintiff's remaining arguments due to conclusions reached in remanding the case as to one issue); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (stating that it was unnecessary to review other issues raised on appeal where remand was required and such issues would likely be reconsidered in the subsequent proceedings). On remand, the Commissioner should fully evaluate the entire record in assessing Plaintiff's fibromyalgia, in accordance with SSR 12-2p, and provide sufficient reasons for the decision.

## V.    CONCLUSION

Upon consideration of the foregoing, it is **ORDERED AND ADJUDGED** that:

1.    The Commissioner's final decision in this case is **REVERSED and REMANDED** for further consideration in accordance with this opinion; and

2.    The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff and **CLOSE** the file.

---

[3] For example, the undersigned notes that the ALJ gave little weight to PA Stender's opinion in part because a physician's assistant is not an acceptable medical source. But SSR 12-2p states that the ALJ "may consider evidence from medical sources who are not 'acceptable medical sources' to evaluate the severity and functional effects of the impairment(s)" in order to "assess the person's ability to function day-to-day and over time." While it was appropriate for the ALJ to note that PA Stender was not an "acceptable medical source," the ALJ's decision to otherwise afford her opinion "little weight" purely because it was not consistent with the previously objective medical evidence was improper for the reasons discussed above. *See Witherell*, 2019 WL 1297927, at *5.

**DONE** and **ORDERED** in Orlando, Florida on September 28, 2020.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record